# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lanier Riley, : 
                Petitioner : 
                : 
           v. :   No. 1459 C.D. 2017
                :   Submitted: October 5, 2018
John J. Talaber, Esquire, Secretary : 
Pennsylvania Board of Probation : 
and Parole ("PBPP"), : 
             Respondents : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**          **FILED: January 18, 2019**

Lanier Riley (Riley) petitions for review of the Order of the Pennsylvania Board of Probation and Parole (Board), signed by John J. Talaber, Esquire, Secretary of the Board, and mailed on September 25, 2017. In that Order, the Board denied Riley's administrative appeal from the Board's May 16, 2016 decision (Decision) recommitting Riley as a convicted parole violator (CPV) to serve 18 months' backtime and recalculating his maximum date from February 19, 2018, to February 27, 2021, which reflected that the Board did not give Riley any credit for the time he spent at liberty on parole. On appeal, Riley argues[1] that: (1) his revocation

---

[1] We have rearranged Riley's arguments for ease of discussion.

hearing was not timely; (2) the Board exceeded its authority when it extended his judicially imposed sentence by changing his maximum date; (3) the Board failed to articulate its reasons for denying Riley credit for his time spent at liberty on parole as required by *Pittman v. Pennsylvania Board of Probation and Parole*, 159 A.3d 466 (Pa. 2017); and (4) the Board made other errors in recalculating his maximum date. Although we discern no merit in three of Riley's arguments, we agree that *Pittman*'s requirements were not met here. Therefore, we must vacate the Board's Order and remand for the Board to issue a decision reflecting its reasons for denying Riley credit as required by *Pittman*.

## I. Background

On June 14, 2005, Riley was sentenced to a term of 7 to 14 years of incarceration for drug convictions,[2] and his minimum and maximum dates were February 19, 2011, and February 19, 2018, respectively. The Board paroled Riley via Board decision dated December 23, 2010, and he was released on May 5, 2011. On January 1, 2014, the Board issued a Warrant to Commit and Detain Riley based on the filing of new criminal charges against him related to his possession of a firearm by a person prohibited from doing so.[3] Riley waived a detention hearing and was detained pending the disposition of those charges pursuant to a Board decision dated February 12, 2014. The criminal dockets for the new criminal charges reflect

---

[2] *See* Section 13(a)(30) of The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. § 780-113(a)(30) (prohibiting "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act").

[3] *See* Section 6105(a)(1) of the Pennsylvania Uniform Firearms Act of 1995, 18 Pa. C.S. § 6105(a)(1) (prohibiting a person who has been convicted of certain offenses from possessing a firearm in the Commonwealth).

that, on February 27, 2014, Riley was released on his own recognizance (ROR). (Board's Brief (Br.), Exs. A and B.[4]) Riley was physically returned to State Correctional Institution-Graterford (SCI-Graterford) on March 7, 2014. (Certified Record (C.R.) at 25, 71.) Between March 7, 2014, and January 15, 2016, Riley was transferred, via writs of habeas corpus ad prosequendum (Writ/ATA), between SCI-Graterford and the Philadelphia County Jail on various occasions to appear before the Court of Common Pleas of Philadelphia County (trial court) on the new charges. (*Id.* at 71.) On November 3, 2015, Riley pled guilty, and he was returned to SCI-Graterford. He was sentenced to two to four years of incarceration followed by four years of consecutive probation on January 15, 2016, and, again, was returned to SCI-Graterford. The Board received official verification[5] of Riley's new conviction on February 2, 2016.

Pursuant to a Notice of Charges and Hearing, a revocation hearing based on Riley's new criminal conviction was scheduled for March 30, 2016. At the revocation hearing, Riley, represented by counsel, challenged the hearing's timeliness. Citing a Board document in his record that reflected that the "120-Day Deadline" was "03/02/2016," he argued that, pursuant to the Board's regulation at 37 Pa. Code § 71.4, the triggering date for the revocation hearing was November 3,

---

[4] Although the certified record contains every other page of Riley's new criminal dockets, (Certified Record at 64-70), one page of which reflects that his bail type was changed on February 27, 2014, the particular page indicating that the change was to ROR is not. However, we may take judicial notice of the dockets of the other courts in this Commonwealth. *See, e.g.*, Pennsylvania Rule of Evidence 201(b)(2), Pa.R.E. 201(b)(2) (permitting courts to take judicial notice of facts that may be "determined from sources whose accuracy cannot reasonably be questioned"); *Germantown Cab Co. v. Phila. Parking Auth.*, 27 A.3d 280, 283 n.8 (Pa. Cmwlth. 2011) (taking judicial notice of a Supreme Court docket in a case involving a similar point of law).

[5] "Official verification" is the "[a]ctual receipt by a parolee's supervising parole agent of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted." 37 Pa. Code § 61.1.

2015, the date Riley returned to SCI-Graterford following his new conviction. (*Id.* at 25, 47-48, 51.) Using that date, Riley asserted, his revocation hearing had to have been held by March 2, 2016, to be timely, it was not, and the parole violation charges against him should be dismissed as a result. Riley's parole agent (Agent) testified that he personally obtained official verification of Riley's conviction from the "CJC," *i.e.*, the trial court, on February 2, 2016. (*Id.* at 50, 55.) The Hearing Examiner did not dismiss the matter, concluding the March 30, 2016 hearing was timely because it was held within 120 days of the Board's February 2, 2016 receipt of the official verification of Riley's conviction.

On the merits, Agent presented documents reflecting Riley's new conviction. Riley testified about the two and one-half years spent on probation during which time he worked at two different jobs to help support his family. He indicated he had no problems, such as misconducts or write-ups, while on parole. Riley explained that, since his return to incarceration, he voluntarily participated in a number of programs and is a different person than he was before. Riley asked the Board not to take his "street time" if possible. (*Id.* at 61.)

**II. The Board's May 16, 2016 Decision and September 25, 2017 Order**

Following the hearing, the Board issued its May 16, 2016 Decision, in which it recommitted Riley as a CPV to serve 18 months' backtime and recalculated his maximum date to February 27, 2021. (*Id.* at 72-73.) The Board's Order to Recommit reflected that it gave 687 days of backtime credit to Riley for February 27, 2014, through January 15, 2016. (*Id.* at 74.) After subtracting that credit, the Board held that Riley owed 1795 days of backtime and, adding those days to March 30, 2016, found that Riley's new maximum date was February 27, 2021. (*Id.*) These

4

calculations reflect that the Board did not credit Riley with any of the time he spent at liberty on parole. As the Board acknowledges, no contemporaneous notations regarding this decision are in the record. (Board's Br. at 6 n.1.)

Riley filed an administrative appeal, challenging the timeliness of his revocation hearing and the recalculation of his maximum date without giving him credit for his time spent at liberty on parole, a period of two years, seven months. (C.R. at 79-80.) The Board denied Riley's administrative appeal via the September 25, 2017 Order. It held that the revocation hearing was timely because it was held within 120 days of February 2, 2016, the date the Board received official verification of Riley's November 3, 2015 conviction. (*Id.* at 90.) The Board did not address the challenges to the denial of credit for Riley's time spent at liberty on parole or otherwise explain its calculations in the Order.[6] (*Id.*) Riley now petitions this Court for review.[7]

### III.    Discussion

*A. Whether the revocation hearing was timely.*

Riley first argues that his due process rights were violated because the revocation hearing was untimely as it should have been held within 120 days of the Board's receiving verification of his return to SCI-Graterford, citing Section 71.4(1)(i) of the Board's regulations. According to Riley, the Board had to have been aware of his conviction prior to February 2, 2016, as he was in its jurisdiction

---

[6] Riley was reparoled from his original sentence via Board decision dated January 24, 2017. (C.R. at 86.)

[7] In reviewing the Board's orders, our review "is limited to determining whether the Board's findings are supported by substantial evidence, [whether] an error of law [was] committed, or whether any of the parolee's constitutional rights were violated." *Andrews v. Pa. Bd. of Prob. & Parole*, 516 A.2d 838, 841 n.10 (Pa. Cmwlth. 1986).

5

before then, and its reliance on that date should be rejected, as a similar argument was in *Mack v. Pennsylvania Board of Probation and Parole*, 654 A.2d 129 (Pa. Cmwlth. 1995). Riley maintains that, pursuant to Section 71.4(1)(i) and *Mack*, the 120-day clock on his revocation hearing began to run when he was returned to the Department of Corrections' (DOC) custody on November 3, 2015. As his hearing was not held within that time period, Riley argues the parole violation charges against him should have been dismissed with prejudice.

The Board argues, in response, that the 120-day period did not begin to run until the Board received official verification of Riley's conviction per Section 71.4(1) of its regulations, 37 Pa. Code § 71.4(1). The exception to this principle cited by Riley in Section 71.4(1)(i), the Board contends, does not apply here because Riley was confined within the DOC and there had been no waiver of his right to a revocation hearing. Because Riley's revocation hearing was held within 120 days of its receipt of official verification of his conviction, the Board asserts it met its burden of proving the timeliness of the hearing.

Where a parolee asserts that a revocation hearing is untimely, "the Board bears the burden of proving, by a preponderance of the evidence, that it conducted the hearing in a timely manner." *Mack*, 654 A.2d at 130. If the Board does not meet this "burden, the appropriate remedy is a dismissal of the parole violation charges with prejudice." *Id.* Section 71.4(1) of the Board's regulations addresses the timing of revocation hearings, stating:

> (1) A revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level except as follows:
>
> (i) If a parolee is confined outside the jurisdiction of the [DOC], such as confinement out-of-State, confinement in a Federal correctional

6

institution or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with *Commonwealth ex rel. Rambeau v. Rundle*, 455 Pa. 8, 314 A.2d 842 (1973), the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility.

 (ii) A parolee who is confined in a county correctional institution and who has waived the right to a revocation hearing by a panel in accordance with the *Rambeau* decision shall be deemed to be within the jurisdiction of the [DOC] as of the date of the waiver.

37 Pa. Code § 71.4(1).

Although Riley asserts that the timing of his revocation hearing is governed by Section 71.4(1)(i) and should have been held within 120 days of his return to SCI-Graterford on November 3, 2015, this subsection applies only where the "parolee is confined **outside the jurisdiction of the [DOC]**." 37 Pa. Code § 71.4(1)(i) (emphasis added). Here, Riley had been confined at SCI-Graterford since March 7, 2014, subject only to brief transfers via Writ/ATAs. Because Riley was not confined outside DOC's jurisdiction, the general provision requiring that a revocation hearing had to "be held within 120 days from the date the Board received official verification of the plea of guilty" applies. 37 Pa. Code § 71.4(1). The Board received official verification on February 2, 2016, and Riley's revocation hearing was held 57 days later, on March 30, 2016. Accordingly, the Board met its burden of proving the revocation hearing was timely.

Riley's reliance on *Mack* is misplaced because that case is distinguishable. The parolee in *Mack* was **confined to a county correctional facility** after his new conviction in order to complete his new sentence, which terminated on November 2, 1993. Following that date, due solely to the Board's inaction, the parolee remained in the county facility until November 12, 1993, at which time he was returned to

7

DOC's custody. A revocation hearing was held on March 9, 1994, which was 117 days from November 12, 1993, but 127 days from November 2, 1993. The parolee challenged the timeliness of the hearing. The Board held that the hearing was timely, using the later date and citing Section 71.4(1)(i) of the regulations. We reversed, holding that "[w]here a parolee is **held at the county institution solely as a result of the Board's action**, the Board is not warranted in delaying a revocation hearing until 120 days after the parolee's return to a state correctional facility" because the Board has acquired jurisdiction over the parolee once his county sentence terminated. *Mack*, 654 A.2d at 131 (emphasis added). Unlike the parolee in *Mack*, Riley was not confined to a county correctional institution and left there to await his return to DOC custody as a result of the Board's inaction. Thus, *Mack* does not require a different result.

### B. Whether the Board altered Riley's judicially imposed sentence.

Riley next argues that the Board does not have the authority to alter a judicially imposed sentence and can only require that he serve the balance of his unexpired, judicially imposed sentence. Thus, according to Riley, the Board can "parole, recommit, and reparole a person at any time between the judicially[]imposed minimum term and the judicially[]imposed maximum term," but it cannot increase the maximum term imposed by a court. (Riley's Br. at 10.) He asserts the Board exceeded its authority when it extended his judicially imposed sentence, set to expire on February 19, 2018, to February 27, 2021.

The Board responds that it is well-settled that when it computes the time yet to be served on an original sentence, a parolee's time spent at liberty may be added to the original maximum expiration date to create a new maximum date. *Armbruster*

*v. Pa. Bd. of Prob. & Parole*, 919 A.2d 348, 351 (Pa. Cmwlth. 2007). This recalculation, the Board asserts, does not usurp the courts' sentencing function, but reflects that the "[m]ere lapse of time without imprisonment," such as when a parolee is at liberty on parole, "does not constitute [the] service of sentence." *Young v. Pa. Bd. of Prob. & Parole*, 409 A.2d 843, 846 (Pa. 1979) (quotation omitted). According to the Board, it may "require that [parolees] serve the remaining balance of [their] unexpired term[s]" by recalculating the maximum date to reflect what remained on their sentences when they were paroled. *Savage v. Pa. Bd. of Prob. & Parole*, 761 A.2d 643, 645 (Pa. Cmwlth. 2000).

We agree with the Board that no usurpation of the judiciary's authority occurred here. The Board may not alter the length of a judicially imposed sentence; however, it is authorized by Section 6138(a)(2) of the Prisons and Parole Code (Code) to reenter parolees into SCIs to serve the remainder of the term they would have been required to serve had they not been paroled. 61 Pa. C.S. § 6138(a)(2).[8] When parolees are "recommitted due to a criminal conviction, [their] maximum sentence date[s] may be extended to account for all street-time, regardless of good or delinquent standing." *Richards v. Pa. Bd. of Prob. & Parole*, 20 A.3d 596, 599 (Pa. Cmwlth. 2011). The Board does not "usurp[] the judicial function of sentencing" when it makes parolees "serve the unexpired balance of [their] original maximum sentence." *Gaito v. Pa. Bd. of Prob. & Parole*, 412 A.2d 568, 570 (Pa. 1980). In such circumstances, the Board is not altering the maximum **length** of a

---

[8] Section 6138(a)(2) of the Code provides that if a CPV is recommitted, "the parolee shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and, except as provided under paragraph (2.1), shall be given no credit for the time at liberty on parole." 61 Pa. C.S. § 6138(a)(2).

parolee's sentence, only the maximum **date** of the sentence. Accordingly, the Board did not exceed its authority when it recalculated Riley's maximum date.

*C. Whether the Board's Decision denying credit complies with Pittman.*

Riley next argues, and the Board agrees, that our Supreme Court held in *Pittman* that, pursuant to Section 6138(a)(2.1) of the Code,[9] the Board has the discretion to give a CPV credit for the time the parolee spent at liberty on parole so long as such credit is not statutorily prohibited in Subsections (2.1)(i) or (ii). Under *Pittman*, however, if the Board exercises its discretion to deny credit, it "must provide a contemporaneous statement explaining its reason for denying a CPV credit for time spent at liberty on parole." *Pittman*, 159 A.3d at 475. Requiring such articulation, the Supreme Court explained, satisfies the "basic notions of due process" and "comport[s] with the intent of the General Assembly in enacting Subsection 6138(a)(2.1)." *Id.* Here, the crimes for which Riley was convicted do

---

[9] Section 6138(a)(2.1) provides:

**(a) Convicted violators.—**

. . . .

(2.1) The board may, in its discretion, award credit to a parolee recommitted under paragraph (2) for the time spent at liberty on parole, unless any of the following apply:

(i) The crime committed during the period of parole or while delinquent on parole is a crime of violence as defined in 42 Pa.C.S. § 9714(g) (relating to sentences for second and subsequent offenses) or a crime requiring registration under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders).

(ii) The parolee was recommitted under section 6143 (relating to early parole of inmates subject to Federal removal order).

61 Pa. C.S. § 6138(a)(2.1). Subsection 2.1 was added to the Code by Section 15 of the Act of July 5, 2012, P.L. 1050.

10

not automatically prohibit him from receiving credit under Subsections 6138(a)(2.1)(i) and (ii), and, thus, the Board had the discretion to grant or deny him credit. Although the Board denied Riley credit for his time spent at liberty on parole, there is nothing in this record indicating that the Board articulated its reasons for doing so. Accordingly, we must remand for the Board to issue a new decision on whether to give Riley credit for his time spent at liberty on parole. If credit is awarded, then the Board shall recalculate Riley's maximum date, and, if such credit is denied, the Board must explain its decision in accordance with *Pittman*.

### D. Whether the Board made other errors in recalculating Riley's new maximum date.

Riley last asserts that the Board made other errors in recalculating his maximum date to February 27, 2021, in its Order to Recommit, (C.R. at 74). In particular, he argues the Board incorrectly calculated the backtime he owed as 1795 days, when it should be 967 days for the period between May 5, 2011, the date he was paroled, and January 1, 2014, the date he began being held on the Board's detainer pending the disposition of his new criminal charges. He also challenges the Board's use of March 30, 2016, as the date of his return to the Board's custody, as this date should have been November 3, 2015. Thus, he contends the Board should have to recalculate his maximum date in accordance with these observations. While the Board does not specifically respond to these allegations of error in its brief, it does explain how it reached the new maximum date of February 27, 2021.

In recalculating Riley's maximum date, the Board found that 2482 days remained on Riley's sentence when he was paroled on May 5, 2011. (Board's Br. at 7.) Riley's assertion that the date that should be used to calculate the time remaining on his sentence is January 1, 2014, is not correct, as the relevant time

11

period is what time remained between the date a parolee is paroled and the parolee's maximum sentence date. *See Burno v. Pa. Bd. of Prob. & Parole*, 67 A.3d 1280, 1282 (Pa. Cmwlth. 2013) (noting that "[t]he recalculated maximum date includes the period from [the parolee's] original parole date . . . through the original maximum date"). Looking at the relevant time period, May 5, 2011, to February 19, 2018, our calculation reveals, as the Board found, that a total of 2482 days remained on Riley's sentence. The Board credited Riley 687 days for the time he was incarcerated only on the Board's detainer, from February 27, 2014, the date he was ROR on the new charges, and January 15, 2016, Riley's sentencing date.[10] Subtracting 687 days from 2482 results in 1795 days remaining on Riley's original sentence. (C.R. at 74.)

This 1795 days must be added to Riley's "custody for return" date in order to recalculate his maximum date. (*Id.*) Riley challenges the date used by the Board, arguing it should be November 3, 2015, the date he was returned to DOC custody following his new conviction, not March 30, 2016. However, in *Wilson v. Pennsylvania Board of Probation and Parole*, this Court rejected a parolee's argument that the date to be used in recalculating parolees' new maximum date is the date they were "actually returned to the [SCI]." 124 A.3d 767, 769 (Pa. Cmwlth. 2015). Thus, there was no error in the Board not using November 3, 2015, to recalculate Riley's maximum sentence. Adding 1795 days to March 30, 2016, results in the new maximum date calculated by the Board, February 27, 2021.

---

[10] Credit for the time a CPV spends in custody between the imposition of the new sentence and the revocation of parole is to be applied to the new sentence. *Williams v. Pa. Bd. of Prob. & Parole*, 654 A.2d 235, 237 (Pa. Cmwlth. 1995).

## IV. Conclusion

The Board did not err or abuse its discretion in finding that Riley's revocation hearing was timely held, in extending Riley's maximum sentence date, or in recalculating Riley's new maximum date as February 27, 2021. However, the Board did not, as required by *Pittman*, provide contemporaneous reasons for its decision to deny Riley credit for the time he spent at liberty on parole. Accordingly, we must vacate the Board's Order to the extent it affirmed the recalculation of Riley's maximum date as February 27, 2021, and we remand for a new decision on whether to give Riley credit for the time he spent at liberty on parole. If credit is awarded, the Board shall recalculate Riley's maximum date, and, if credit is denied, the Board must explain its reasons in accordance with *Pittman*.

_____
**RENÉE COHN JUBELIRER,** Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lanier Riley, :
                 Petitioner :
                            :
                            :
             v. : No. 1459 C.D. 2017
                            :
John J. Talaber, Esquire, Secretary :
Pennsylvania Board of Probation :
and Parole ("PBPP"), :
               Respondents :

# O R D E R

**NOW**, January 18, 2019, the Order of the Pennsylvania Board of Probation and Parole (Board), signed by John J. Talaber, Esquire, is hereby **VACATED** to the extent it affirmed the recalculation of Lanier Riley's maximum sentence date from February 19, 2018, to February 27, 2021, and the matter is **REMANDED** for the Board to issue a new decision in accordance with this Court's opinion.

Jurisdiction relinquished.

 

_____
**RENÉE COHN JUBELIRER,** Judge